Kashief v. BNP. May it please the Court, my name is Tobias Wolfe from the University of Pennsylvania Law School, representing the plaintiff appellants in this case. With me at council table are Catherine Crawford and Thomas Watson from the firm of McCool Smith. Prior to the ruling of the Court below, no court had ever held that crimes of genocide, torture, and mass rape are entitled to deference, comity, and respect in the courts of the United States, and this Court should reject that holding for two principal reasons. First, BNP has not identified any official sovereign act of the Government of Sudan that would be the subject of this lawsuit, that would serve as a rule of decision in this lawsuit, and the Supreme Court unanimously held in W.S. Kirkpatrick that where that element is absent, the act of state defense simply fails at the threshold. It plays no role in this lawsuit. Second, the actions by the Government of Sudan that BNP has identified in attempting to craft their defense are crimes against humanity that are universally condemned, and the executive branch of the United States Government and the Congress of the United States have both identified as atrocities, including by the imposition of the sanctions that BNP violated in this case, sanctions that had as one of their primary purposes the prevention of the very injuries that these plaintiffs are suing on. Should we be focusing, focusing may be not quite the right word, but isn't part of our focus on the fact that it is not just Sudanese acts of state that we're talking about, but it is the United States Government's sanctions that were violated or allegedly violated by the bank? That is, you don't, the act of state, the state is the United States and not Sudan. Well, Your Honor, it is quite correct to say that the sanctions imposed by the United States, which BNP violated in their ten-year-long conspiracy, are a statement of policy by the United States about the atrocities committed by the government of Sudan. Any defendant seeking to raise an affirmative defense of an act of state must identify the act of state of a foreign government that will be declared invalid as a rule of decision in the courts of the United States. But what I'm trying to figure out is whether it was a violation of U.S. law. Take negligence per se, for example. Is that, I know it's sanctions and I know it's the U.S. government. I want to know whether the bank is being accused of violating U.S. law rather than, can we get the act of state of Sudan out of here just for a minute and talk about act of state being the act of the United States in saying you cannot send, you cannot deal with Sudan because, and therefore I'm violating an American statute and it doesn't matter. Sudan can say everything is legal. They can insist on, they can even have the death penalty. Who knows how outrageous they might be. Yes, Your Honor. So this is a claim about the New York law civil liability that attaches to BNP's violation of both New York criminal law and the criminal sanctions of the United States government. Correct. And so you're exactly correct, Your Honor. The act of state doctrine comes in, if at all, only by way of an affirmative defense. It has nothing to do with the definition of the plaintiff's cause of action in this claim, in this case, and the plaintiff's cause of action in this case. I suppose it might if you're talking about complicity with the Sudanese government to break Sudanese law and thereby harm Sudanese people. Yes, Your Honor. So BNP's 10-year criminal course of conduct broke many laws in many jurisdictions. And the laws that the plaintiffs in this case are proceeding under are New York tort law that relate to financial improprieties committed largely within the financial markets of New York, which this Court held in the Leachy case, New York choice of law rules would attach New York tort law to the question of whether they suffered as a result of BNP's misconduct. Right. This is, at base, a straightforward case about financial crimes and tort liability flowing from those financial crimes. BNP has attempted to make it into a case that involves U.S. foreign policy in relation to Sudan. It needn't address those questions at all, precisely because BNP has failed to identify any sovereign act of Sudan that would play a role in this case whatsoever. Why do you think you're entitled to rely on 215AA? I mean, 8A. So Section 215AA is an alternative basis for ---- Did you raise it below? We did not, Your Honor. So why do you think you're entitled to raise it? Let me answer that in two ways, Your Honor. First of all, it's an alternative basis for finding these claims timely. The Court need not reach it. And second, this Court has discretion to reach it because it involves a question of law as to which of the relevant facts have already been fully developed below. And ---- All right. You two know what you're talking about. What is this ---- I apologize, Your Honor. BNP succeeded in getting one portion of the plaintiff's claims dismissed as untimely, namely the ---- Thank you. I got it. All right. We switched to the statute of limitations. We did, indeed. I'm there now. Thanks. I'm sorry to ---- And under either Section 215 ---- More. Pardon me, Your Honor. Under either Section 215 sub 8 or under Section 213B, which is the provision that the district court ruled on in this case, the analysis is quite straightforward. BNP is a criminal defendant. It was convicted, pled guilty of a criminal offense. The plaintiff's claims are for the injuries that resulted from the defendant's crimes. And under either Section 213B or under Section 215 sub 8, if the Court chooses to reach it ---- The 15 is somewhat more straightforward because you don't have the confusion in New York. I don't think under the other statute you don't have New York Court of Appeals decision, and there's a bit of confusion. I'm not sure how serious it is, but it's not as straightforward as 215. Allow me to say, Your Honor, I don't believe there is any confusion about the interpretation of Section 213B, except with all respect in the district court below. The courts of New York have been quite consistent in saying that the purpose of Section 213B is to provide remedial avenues for people who are the foreseeable victims of criminal activity. And the only basis on which the lower court was able to craft an argument that 213B doesn't apply here was first by suggesting that a conspiracy ---- a violation of Federal conspiracy law doesn't have any victims but the United Executive law, which there is no reported New York case that has undertaken that grafting, and instead a thorough examination by Elkin v. Casarino, a decision of the Second Department, rejecting the proposition that those Executive law provisions have anything to do with Section 213B. And I believe that those are the only sources of confusion about the applicability of Section 213B. I could take you back to the act-of-state doctrine. How are the acts here in Sudan, the atrocities, different from the acts in Underhill, where there was assaults, detentions? Thank you, Your Honor. So in several ways are these acts different. First, the judgment of the United States government in the Underhill case was that the revolutionary force in Venezuela was waging a lawful war and had become the And that the actions that were complained of by Mr. Underhill involving the refusal to grant a passport, for example, were sovereign acts that had to be respected by the United States after recognizing the revolutionary force as the new government. Here we are talking about crimes against humanity, which are ---- have been consistently denounced by the United States government, including as recently as last month in a statement issued by the State Department about U.S. policy and the current state of relations with Sudan, in which the United States reiterated once again that Sudan had committed genocide, that there were continuing human rights violations in Sudan, and that attempts to negotiate and broker better relations and better conditions in Sudan happened against a backdrop of the very atrocities that the United States has consistently denounced. I would also ---- The position that Kirkpatrick is the last word on this active state problem. Absolutely so, Your Honor. And Kirkpatrick ---- if I may, Kirkpatrick draws the distinction, which the lower court failed to understand, between allegations that a sovereign or their agents have engaged in wrongful conduct, which, of course, this Court hears all the time in Foreign Sovereign Immunities Act cases, in alien tort claims cases. All the time do U.S. courts have occasion to talk about the wrongful conduct of foreign Peterson decision earlier this year from this court, as in the Republic of Philippines v. Marcos case in which the wrongful personal conduct of a foreign head of state was found to be actionable in U.S. courts. The only circumstance in which the active state doctrine attaches is where there is an official decree, an official sovereign act that will serve as a rule of decision in a U.S. lawsuit. And BNP has never identified such an act, and the district court neither identified such an act nor put BNP to the burden that they should have had. And so I want to be ---- I think I knew this. There was no oral argument on this. Is that right? That's correct, Your Honor. And oral argument might have given us an opportunity to help to engage with the district court on these very issues. Thank you. Thank you, Your Honor. We'll hear from the other side. Thank you. May it please the Court. Carmine Bacuzzi from Cleary Gottlieb on behalf of the BNPP defendants. With me at counsel's table is my colleague, Rathna Ramamurthy. The district court ---- What is the official act? The official act, the entire basis of this complaint is that the official acts, these were all official acts of the government of Sudan, and that the amount that you ---- What are the official? I just want you to identify for me what the official acts are. Overseeing ---- Or decrees of Sudan. Overseeing militias that attacked civilians that perpetrated, in the words of the complaint, battery takings, which even in the understanding of the plaintiffs is in the heartland of the active state doctrine. Why are these just random criminal acts? How do these become official acts or decrees or pronouncements of a sovereign? The entire theory of the complaint, Your Honor, is that this is the government of Sudan acting as official policy, that this is what they were doing, this is the regime, that they were engaged in civil war. Those are the people who got the bank's money. I mean, it wasn't the individual people doing the attacking who got the bank's money. That is why they've hinged their theory on this, because otherwise the chain of causation is even further attenuated if they say that this is about individuals, like in the Karadzic case, that weren't acting under color of law. And so the whole point of their claim, and they've invoked international law, but there are no international law claims in this case. You're going to be asking us to write a very odd opinion that says acts that are illegal under the Sudanese constitution are official acts of Sudan. I don't think I'm smart enough to square that, to close that circle. The way the circle is closed is it's closed just as it was in the Underhill case, in the Harani case. So Underhill dealt with false imprisonment and claims of assault and battery. Harani dealt with a defamation suit. The Glenn case dealt with theories of trespass and unjust enrichment. And in all those cases, we go back to the Bedrock case, Sabatino and Underhill, where the rule of the act of state is that a court in one country will not sit in judgment on the acts of the government of another done within its own territory. And that is exactly what we have here. And if we think about this case, the reason why they haven't pled these acts as international torts, international law torts, is that Jesner, decided last term by the Supreme Court, said that such claims could not lie against a foreign corporation like my client. And the reason why they came to that conclusion were the same separation of powers concerns that motivate the act of state doctrine. It's the provenance of the executive and its supreme role in foreign affairs of the United States and the legislature to take action in this area, and they're doing that. That brings me back to my first question, which is how about the extent to which what your client did was a violation of precisely that, of what the other two branches of government require and the sanctions and the law of the United States, irrespective of what Sudan did. We're not passing judgment on Sudanese law. We're passing judgment on the sanctions that have been imposed with respect to Sudan, kind of like the criminal charges, I guess, for which your client paid a substantial amount of money. But if the case is based on the violation of the U.S. government sanctions, then plaintiffs are out of court because there's no private right of action under those sanctions. The executive orders in the case law interpretive are specific that those executive orders give no right or impose any obligations vis-à-vis any other party against any other party. So if they pled this as a sanctions violation, there's no private right of action for that. And in terms of the enforcement of that law in the United States, BNPP was criminally prosecuted, it pled guilty, and it paid a $9 billion fine. All that, again, within the bulwark created by the executive and the legislature to deal with the sanctions issue, but for which these plaintiffs have no claim. And so they have to step back. Step back and think about the purpose of the act-of-state doctrine. You know, it's rooted in considerations of international comedy, separation of powers. Does applying the doctrine on these facts further those purposes and considerations when you have the executive branch and the legislative branch condemning what happened in Sudan? The key consideration here is the separation of powers, Judge Chin. And specifically, so the United States government imposed those sanctions. They gave no private right of action. In January of 2017, the sanctions were lifted. When the sanctions- You're suggesting that if we were to hold otherwise, we would be ourselves sanctioning a violation of law or violating the law ourselves by granting a private right of action, whereas the other branches of government have said there is no private right of action. Correct. There is no private right of action for the sanctions. You're saying that we would be violating that if we said there was a private right of action here. Well, I think you'd be interpreting the law incorrectly. Well, I don't mean I would go to jail for it. I would just be harangued by fake news. I mean, but I wouldn't be- Well, just to get to fake news, Your Honor, in 2017, the Obama administration lifted these sanctions, specifically noting the progress being made in Sudan and the negotiations and the attempt to improve- What on earth does that have to do with these individuals who are asking to offer evidence in a court of law that they suffered injury as a consequence of what your client did? Because it gets, Your Honor, to the second Sabatino factor. The second Sabatino factor- I don't get to the Sabatino factors because I have serious concerns about whether the doctrine is implicated here at all. I mean, I ask your learned opponent about Kirkpatrick, and, you know, it's- Justice Scalia says the issue in this litigation is not whether the acts are valid, but whether they occurred. And it seems to me that's this case. We're not questioning the validity of them, which is the heart and soul of the active state doctrine. We're simply considering whether it is adequately alleged that they occurred. With respect, Your Honor, in Kirkpatrick, the defendants conceded, all parties agreed, that the defendant there could have had liability regardless of whether there was an invalid act by the Nigerian government. Here, because the claims are all based on the primary acts of the Sudan, and BMPP is being sued in a secondary capacity, aiding and abetting, conspiring, the only way to get to a cause of action here for plaintiffs is to have that first-level tort by the government of Sudan. So that's the act of invalidation, applying, and no case that we have found has done this, applying New York tort law to actions by the Sudanese government within their own borders, or applying, and it's a choice of law question- The claim is applying New York tort law to the bank, which has operations in New York. But they're doing it, Your Honor, in the context where all of the injuries alleged, all the activity alleged that directly injured their clients was in the Sudan. And as I mentioned, there's a choice of law- Your Honor, I guess this is a variant of what Judge Parker asked a few moments ago, but you're asking this Court to hold that atrocities, human rights violations, are official acts to which we must give deference. That's what you're asking, right? I'm not asking this Court to give deference. The deference here is owed to the executive and the legislative branches for them to deal in this area and following the act-of-state doctrine to allow that to go forward, because otherwise this Court is stepping into a realm that our constitutional framework gives first power to the executive and primary power. I mean, doesn't Juskogin's just eviscerate that argument? I'm sorry? Juskogin's eviscerates that argument, doesn't it? But, Your Honor, they're not pleading Juskogin's claims. These are not brought as international claims. Sabatino, of course, stands for the proposition that if something is in violation of international law, that doesn't stop the act-of-state doctrine from being applied. But putting that aside, they have not pled, and they are not seeking to hold BMP liable for Juskogin's violations. And I would add they couldn't because following the rule of law in this — that this Court espoused in the Talisman case, they cannot — they haven't pleaded, and they can't plead that we, the bank, acted with a specific intent to further the human rights violations that they say occurred in the Sudan. Well, the police said you pled to that, didn't you? We pled that we conspired with Sudanese banks to violate sanctions, the U.S. government sanctions, not — Your client knew that the Sudanese government was committing atrocities, and it was facilitated by the money you passed — your client passed on to him. Your Honor, I don't believe that there can be a link drawn through the money that flowed as a result of those sanctions violations and the specific acts of violence that befell these plaintiffs. Then why did you pay a $6 billion fine? Because we violated sanctions, Your Honor. And the sanctions don't give a private right of action. And the sanctions that this Court looked and what we did, if you look at the Rothstein case decided by this circuit, there's not that direct link. I mean, these are merits issues to the plaintiff's injuries here. But going back to the act-of-state doctrine, the act-of-state doctrine, and if you think about all three factors, and the first one, which is I think they most rely on, and which is your Yuskogin's point, Your Honor, which is the degree of codification or consensus concerning a particular area of international law. But there's no international law in this case, and there is no codification of consensus about applying New York State law, a court applying either New York State law or Sudanese laws to declare invalid. The bank is bringing international law into the picture by invoking the defense. The defense is act-of-state doctrine because these are official acts. And now suddenly we have to look at those acts and look at them in the context of international law. But, Your Honor, we're invoking U.S. law, which is the source of the act-of-state doctrine, the separation of powers. And we're looking at their complaint as pled, which is pled as this is about the official acts of the government of Sudan. And we're saying that the act-of-state therefore says look to the executive and the legislature to determine what remedies these folks have because they don't have a remedy in this court for these claims. Can I ask you, act-of-state means the act of a foreign state, right? Correct. What is the act of Sudan here that is the act-of-state? The alleged official acts in running their militias that inflicted violence on the plaintiffs, in expropriating, and again, there are expropriation claims in this case. Those, by everybody's agreement, are in the heartland of the act-of-state. And then other acts of sexual violence, mass rape, and they say genocide. And how are those last three acts-of-state? Well, they, again, this is their theory. This is pled as the act-of-state of the government of Sudan. If Your Honors decided that those were not acts-of-state, then they have an issue with the attenuation in terms of the causal chain because they're basically saying by interacting with a government, a bank is now responsible for anything on the ground that befalls an individual at the hands of, say, a policeman. I understand that, but do we know that at this point that it is that the other acts that seem to be individual acts, do we know that they are not at this point that rape can be an act-of-state and cannot be an act-of-state, presumably? Do we know which is which? They have pled that they were all the acts-of-state of the Sudanese government. That is the theory of their case. And so I think based on that. Including negligence per se, that is the theory of their case. Negligence per se is that it was negligent per se for the bank to deal with the Sudanese government, and as a result, we're liable because of the cognizable injury that Sudan inflicted on the plaintiffs. How does the act-of-state bar that claim? Because I think the key there and what the district court found was that the cognizable injury, i.e., that it was wrongful, requires an act of finding of wrongdoing by the court of what the government of Sudan was doing in its own territory during the time of the complaint. Just briefly on the statute of limitations issue, Your Honors. Go ahead. The 215-8A was not raised below and, therefore, is waived. It doesn't apply. I would refer, Your Honors, to the Alfred case, the first department case. It says specifically that the purpose for that statute was to alleviate the burden of a plaintiff being in a criminal proceeding and then having to deal with a civil suit and to give them time to do that. The plaintiffs, of course, were not victims of the sanctions violations. They were not involved in that criminal proceeding. And so for that basis alone, the statute doesn't apply to them. In terms of 213-B, plaintiffs' counsel said specifically that it's a foreseeability standard. Foreseeability is not used in any of the cases construing 213-B. If you look at the Boyce case and the Hemmerdinger, which is a third department case, and the Hemmerdinger case from the Eastern District, they both talk about whether the plaintiff there was the direct victim, was directly injured by the crime. And here we don't have that nexus. The court below is correct in finding that. And so 213-B does not apply as well, which means that for all of the intentional torts, which are counts 3 to 14, 15, 19, there's an additional independent ground, the one-year statute of limitations, that would require their dismissal. Thank you, Your Honors. Thank you. Thank you. We'll hear the rebuttal. Your Honors, let me try to clear up some confusion here. The Court asked what are the official acts. And my opponent talked about the atrocities committed by the government of Sudan. The atrocities committed by the government of Sudan is wrongful conduct committed by the government of Sudan. The government of Sudan has never embraced and proclaimed its wrongful conduct as the official sovereign policy of the government of Sudan, which is what is required for the act-of-state doctrine. And this is not merely a technicality. When a government or a rogue autocrat in a government or agents of a government commit atrocities, if they announce to the world that genocide and mass rape constitute the official sovereign policy of that government, that has implications in the international community, that has foreign relations implications, that has implications for their individual criminal liability in international tribunals. And the Sudan and the officials of Sudan have never embraced their atrocities as the official acts of Sudan. And so, with respect, my opponent's suggestion that our theory of the case is that these are official acts within the meaning of the act-of-state doctrine is simply flat wrong. The theory of the case is that these were acts by the government of Sudan that constituted wrongful conduct and that BNP was knowingly facilitating that wrongful conduct in violation of both U.S. law and New York law. The conduct of state is simply separate from act-of-state. Exactly correct, Your Honor. It's some kind of formal adoption of policy or program, whereas the country can act even contrary to its own state acts. Exactly correct. And if I may quickly, counsel points to the fact that there are no private rights of action under these sanctions, which, of course, is true. This Court has already rejected the argument that that language forecloses other avenues of relief and other causes of action. I would point the Court to Cottage v. Karadzic, in which this Court relied upon the Genocide Convention Implementation Act in order to hold that genocide constitutes a violation of Jus cogens principles. That statute includes the same kind of boilerplate language about no private rights of action. And Mr. Karadzic in that case attempted to argue that that language foreclosed other remedies. In that case, he was proceeding under the Alien Tort Statute. This Court expressly held that that language about no private remedies under one statute has nothing to do with the availability of remedies under a separate and independent cause of action, which here is New York law seeking to hold BNP responsible for its violation of New York criminal code in committing financial crimes in the State of New York. Third, quickly, BNP once again talks about how somehow their burden to make arguments under the Act of State Doctrine and Sabatino about international law is somehow eviscerated because we are proceeding under State common law claims. Sabatino was a State common law claim. Sabatino was a New York conversion law claim under New York common law. And the Court conducted a substantive international law analysis about what the status of property expropriations were. And those plaintiffs lost because property expropriations are not genocide. Finally, if I may, the takings of property and expropriation in this case are actions that were taken in furtherance of genocide. That doesn't put them comfortably into the bailiwick of established expropriation law. When you shove somebody out of their home and burn it to the ground as part of a campaign of genocide, that is part of a campaign of genocide. It is not a property expropriation like seizing the artwork of a Soviet citizen in a case like Konolov. This Court has clearly stated that this Act of State Doctrine should fail at the threshold and that if the Court has to reach it on the merits, it should strongly hold that both the consensus in international law and the consistent statements of foreign policy of this government would require rejecting that defense on the merits. For those reasons, the district court should be reversed in its entirety. Thank you, Your Honor. Thank you, Ron. Thank you both. Thank you both. We'll reserve decisions.